Flynn on Saturday, and I asked Mr. Flynn, 'Can I go ahead?' Mr. Flynn said, 'Yes.' Monday morning they started in." Flynn denies that Hartung showed him a draft contract, but admits that he showed him the plans, that he is not sure that he did not also show him the specifications, and that he said, " 'Where's your plumbing?' offhandedly, as a sort of expert on plumbing." He also admits that he knew the old building had been removed to another part of the lot. The court found that Flynn inspected and assented to the contract, plans, and specifications; that he gave permission for the erection of the building, and consented thereto,—and ordered judgment of foreclosure. From this judgment the defendant Flynn appeals.

The lien law (chapter 416, Laws 1897) provides as follows:

"Sec. 3. A contractor, sub-contractor, laborer or material man, who performs labor or furnishes materials for the improvement of real property with the consent or at the request of the owner thereof, or of his agent, contractor or sub-contractor, shall have a lien for the principal and interest of the value, or the agreed price, of such labor or materials upon the real property improved or to be improved and upon such improvement, from the time of filing a notice of such lien as prescribed in this article."

This consent clause proceeds upon the equitable principle that one who knowingly receives the benefit of the labor or property of another, in the form of improvements upon his land, ought to have his property subjected to a lien for the value of such improvements. In the present case there was evidence sufficient to support the finding of the court that Flynn consented to the contract of the plaintiffs for the erection of the building, and there is no reason why the land should not be held subject to their lien. The judgment should be affirmed.

Judgment affirmed, with costs. All concur.

---

MORRIS v. METROPOLITAN ST. RY. CO.

(Supreme Court, Appellate Division, First Department. May 11, 1900.)

1. DEATH—WRONGFUL KILLING OF SON—INADEQUACY OF DAMAGES.
   The deceased son of plaintiff was 16 years old at the time of his death, was about 6 feet in height, weighed 140 pounds, and was strong and healthy. He was attending school, and was expected to be graduated the following summer. The plaintiff, his father, was in prosperous circumstances, paid the expenses of educating the son, and did not rely on him as a source of income. *Held*, in an action by the father, as administrator, for the wrongful killing of the son by a street-railroad company, that a judgment awarding six cents damage to the plaintiff could not be sustained, as such damage was inadequate.

2. APPEAL—PREPONDERANCE OF EVIDENCE FOR DEFENDANT ON PLAINTIFF'S APPEAL.
   When a judgment for plaintiff for six cents damages was awarded, from which he appealed on the grounds of inadequacy, the judgment should be set aside if the evidence preponderates in favor of defendant.

3. SAME—QUESTION RAISED ON APPEAL.
   Where plaintiff appeals from a judgment in his favor on the ground of the inadequacy of the damages awarded, and defendant does not appeal, the judgment will not be sustained because the plaintiff failed to prove a cause of action, as by his failure to appeal he conceded plaintiff's right to recover.

Appeal from trial term, New York county.

Action by Charles B. Morris, as administrator of the estate of Leslie B. Morris, against the Metropolitan Street-Railroad Company for the wrongful killing of plaintiff's intestate. From a judgment in favor of plaintiff, and an order overruling his motion for a new trial, he appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, PATTERSON, and INGRAHAM, JJ.

Edmund L. Mooney, for appellant.
Charles F. Brown, for respondent.

HATCH, J. The only point involved upon this appeal is the question of the inadequacy of the damages which have been awarded by the jury. The action is brought by the father of the deceased, suing in a representative capacity, to recover damages on account of the negligence of the defendant in causing the death of his son. Upon the merits the jury found in favor of the plaintiff, and by their verdict assessed his damages at the sum of six cents. The plaintiff moved · to set the verdict aside upon the ground, mainly, that the damages awarded were inadequate. The motion was denied, and from the judgment entered upon the verdict, and the order denying the motion for a new trial, the plaintiff appeals. No appeal was taken by the defendant.

It appeared upon the trial that the deceased was past 16 years of age at the time of his death, was 5 feet and 11 inches in height, and weighed 140 pounds,—unusually large for a boy of his age. He was strong and healthy, very active, and very intelligent. He had been at school, but expected to graduate in the summer following his death, which occurred on the 9th of December, 1898. In the summer months, for 5 or 6 weeks, during vacation time, he assisted his father in his business of dealing in grain and feed, and very often upon Saturdays, when there was no school; and he took his brother's place when he was off on a vacation. The boy received no compensation for this service, nor did he earn any money elsewhere. The plaintiff supported him, paid the expenses of his education, and was not relying upon him at that time as furnishing a source of income. The plaintiff is in prosperous circumstances, and was in no present need of support from his son. The foregoing is, in substance, the evidence from which the jury were called upon to measure the pecuniary loss sustained.

It may be conceded that the extent of damages which may be awarded in cases of this character rests very largely with the jury. But the finding and the evidence upon which it is based are subject to the same scrutiny in review by this court as upon any other question. Unless the finding be justified by the evidence, the court is called upon to set it aside; applying thereto the same rules which the court is authorized to apply in reviewing questions of fact. Brown v. Foster, 1 App. Div. 578, 37 N. Y. Supp. 502; O'Shea v. McLear (Sup.) 1 N. Y. Supp. 407. Exercise of the power is not governed by any well-defined rule, but rests in the circumstances of the particular ·case. The measure of' the plaintiff's right of recovery is the pecuniary damage which he has·

sustained. In measuring this, however, the consideration is not limited to the benefit received prior to the death, but it should embrace all the probable or even possible benefits which might accrue from this life, modified by all the chances of failure and misfortune. Among these is the probable or possible direct benefit from earnings during minority, and the legal duty of support of the parent owed by the infant in case of need after majority (Birkett v. Ice Co., 110 N. Y. 504, 18 N. E. 108); also, his advice during life, and the prospect of inheriting from him after death (Benson v. Corbin, 145 N. Y. 351, 40 N. E. 11). There are few cases in which special pecuniary damage can be shown. Especially is this true of infants of tender years. But such fact does not justify the court in holding that no damage is shown, or in directing that nominal damages only can be awarded, as the right to recover is not only for present, but also for prospective, loss. Ihl v. Railroad Co., 47 N. Y. 317. It is the evident contemplation of the statute that every person is of some relative value to others. Oldfield v. Railroad Co., 14 N. Y. 310. Modern legislation in this regard, both constitutional and statutory, has emphasized the assumptions to be drawn from the enactment. Medinger v. Railroad Co., 6 App. Div. 42, 39 N. Y. Supp. 613. While, as we have observed, each case is to be largely governed by its particular circumstances, yet we may consider, as bearing upon the question of the amount which ought to have been awarded, the recoveries which verdicts have established, and which the courts have upheld. Johnson v. Railroad Co., 80 Hun, 306, 30 N. Y. Supp. 318, affirmed on appeal in 144 N. Y. 719, 39 N. E. 857. The authorities cited in the opinion in the last case—and they are but a tithe—show that, in almost uniform course, the award of damages for negligently causing the death of an infant has been of a substantial sum. Indeed, we look in vain to find any logical relation between the verdicts which have been rendered in this class of actions, and the reasons which the courts have assigned for their support, and this verdict, which awards nominal damages. It is quite true that we are not to apply strict rules of logic in sustaining or setting aside the verdicts of juries. Were we to do so, the whole administration of the law by this means would be thrown into the greatest confusion, if it did not entirely fail. Nevertheless, we may be reasonably sure, when we are confronted with a verdict which fails in logic when compared with others, and which, upon a statement of it, shocks the moral sense, that something about that verdict is so wrong that it ought not to be permitted to stand. This seems to be the status of this verdict. We think that the evidence in this case fairly shows that this life would have been of substantial pecuniary value to his father. Physically, he was splendidly equipped. Mentally, he was strong and vigorous. The immediate time had arrived when the cost and expense which his father had bestowed upon him and borne gave great promise of return. It was this fact which the jury were to consider, and to which much weight has been attached by the courts. Can it be possible that this prospect was worth no more than six cents? In addition, the father had a reasonable right to expect that he would be able to rely upon the advice which vigorous mentality is capable of giving, and that loss in this respect is of a distinct pecuniary character. Meas-

ured by all the surroundings, we think that the jury failed fairly to comprehend the elements of damage which the case necessarily presented, and that they erred in awarding nominal damages, for which reason this judgment should be set aside.

It was said, however, by the learned court below, that the evidence preponderated in favor of the defendant, and for that reason it declined to interfere with the verdict. If this view is to obtain, then it becomes the duty of the court to set the verdict aside. We are also urged by the defendant to sustain the verdict for the reason that upon the evidence there can be no recovery, as the plaintiff failed to prove a cause of action. Such question is not fairly before us upon this appeal. The verdict of the jury in favor of the plaintiff has established his right to recover, and upon such question the plaintiff is concluded. The latter has not appealed from the judgment, and unless it appeals it presents no grievance for redress. It could only appeal when aggrieved. Code Civ. Proc. § 1294. It cannot be aggrieved by anything when it stands upon the judgment, and, choosing to stand upon it, it admits necessarily that the plaintiff was entitled to recover something. Therefore every question in this respect must be resolved in favor of the plaintiff. Carples v. Railroad Co., 16 App. Div. 158, 44 N. Y. Supp. 670. In this case the exceptions of the respondent were not properly before the court, as they were not contained in the record; but they were also not before the court because no appeal from the judgment presented them. There is no conflict between this case and that of Arnold v. R. Rothschild's Sons Co., 23 App. Div. 221, 48 N. Y. Supp. 854. In that case the verdict was for the defendant, and the plaintiff appealed. The court simply held that the judgment was right for the reason that upon all the proof the complaint should have been dismissed. In the present case both parties stand upon the judgment,—the appellant, to the extent that it finds a cause of action in his favor; and the respondent, to the extent to which a recovery has been had. And the fact of a recovery, as we have seen, is fatal to the respondent's position, as it assumes what it is precluded from questioning so long as it does not claim to be aggrieved by appealing therefrom. Indeed, in the sixth point of the respondent's brief is stated the correct rule:

"All the exceptions relate to the exclusion of evidence upon the question of defendant's negligence, and, as the verdict of the jury established its negligence and the deceased's freedom from negligence, no prejudicial error can be based upon the exceptions."

Of course, this is aimed at the plaintiff's claim of erroneous rulings; but, as it is fatal to the plaintiff so far as it finds application, so, also, is it fatal to the defendant so far as it seeks to apply a rule which would overthrow the effect of the judgment.

This judgment should therefore be reversed; the plaintiff to pay the costs and disbursements of the former trial. All concur.