BOTTUM, Administrator, Respondent, v. KAMEN, Appellant.

(180 N. W. 948.)

(File No. 4761.    Opinion filed January 7, 1921.    Rehearing denied March 25, 1921.)

1. **Executors and Administrators—Petition For, Notice Of, Sufficiency, Appointment of Non-heir Under Waiver By Decedent's Mother, Jurisdiction to Appoint—Collateral Attack.**

   A petition by the mother of decedent, for her appointment as administratrix, and notice thereof, being sufficient, and she having in writing waived her right to such appointment and requested that one B be appointed administrator, held, that county court had jurisdiction to appoint B, since, even if the order was irregular (a point not decided) it cannot be attacked collaterally.

2. **Appeals—Error—Instructions, Cause Given Not Of Record, Nonshowing of Equivalent Instructions Given, Effect.**

   Where Court's instructions, other than portions thereof made subject of assignments of error, are not in appeal record, and record fails to show that equivalent instructions to those refused were given, the well settled rule applies that in absence of affirmative showing to contrary, this Court will presume jury were fully and correctly instructed on all material matters; in absence of which showing no prejudicial error appears.

3. **Evidence—Negligence—Death of Minor Son, Measure of Damages To Mother, Surplus Earnings of Son As Measure Of, Life Expectancy Of Pecuniary Benefit From Son's Continued Life— "Tables of Mortality," Admissibility—Rule.**

   In a suit on behalf of the mother of a deceased minor son, for damages from loss of benefits derivable from the son's earnings before and after majority; it being conceded that the majority rule that plaintiff may recover whatever prospective loss evidence shows she has sustained as pecuniary benefits reasonably expected had deceased passed his majority, and that the question presented is:   What evidence or facts or circumstances are necessary to show parent's reasonable expectancy of pecuniary benefit from continued life of deceased; deceased

being approximately nineteen years of age when killed and an illegitimate child, his mother being 36 years old, she having been divorced from a subsequently married man, the son having lived with her until April, 1919, and being in good physical condition; having subsequently sent his mother $90 in different amounts, the last being sent just before he began work for defendant at 50c an hour; having also contributed somewhat to her support before leaving home; the mother having worked at dressmaking and having a home with some encumbrance; held. that the "American Experience Tables of Mortality" were properly received in evidence to show expectancy of plaintiff's life and her deceased son; and while not contained in appeal record, it ·is presumed that expectancy of life was shown to justify the amount of the verdict, so far as that element of proof enters into award of damages; such proof being one of chief factors in estimating amount of damages where beneficiary has sustained or may sustain pecuniary injury from such death.

4. **Same—Death By Wrongful Act—Measure of Damages To Mother—Statute Limiting To $10,000, Applied Re Life Expectancy—Elements Entering Into Damages.**

In the light of the facts above outlined, and under Sec. 2931, Code 1919, providing that in every action for damages resulting to * * parents, etc., of a person whose death was caused by wrongful act, jury may give such damages not exceeding $10,-000 as they may think proportionate to pecuniary injury resulting; held, in the light of defendant's contention that the pecuniary injury, present and prospective, sustained by plaintiff, could not equal amount of verdict ($5000,) that while, considering only the age, life expectancy and earnings of deceased at date of his death. they would yield a sum smaller than awarded by verdict, yet the additional experience and skill which may have been acquired in some years of life he was· deprived of,' would increase his wages, which element of uncertainty debars the arithmetical standard under defendant's contention, and in absence of any standard, where the record or the size of the verdict does not show passion or prejudice, Court cannot determine that verdict is clearly excessive. Held, further, that in considering damages, all probable benefits which might accrue from this life, modified by all chances of failure and misfortune, should be considered; among which are probable benefits from earnings during minority, the legal duty of support of parent owed by the infant, his advice during life, and the prospect of inheriting from him after death.

5. **Same—Measure of Damages—Son's Contribution to Mother's Support, Indicative of Some Expenditure For Self-support—Earning Capacity Alone Not Decisive.**

The fact that plaintiff's son in his lifetime contributed to the mother's support is in itself evidence that some portion of his earnings were expended in his own support; this in response to appellant's contention that there was no evidence as to how much of his earnings went toward self support. Nor is earning capacity alone the measure of financial injury resulting from death.

6. **Same—Measure of Damages—Child's Duty Re Support of Parent, Former Decision Approved Re Child's Duty and Parents' Right—Variant Realtions Considered.**

As held by this Court in Tobin v. Bruce, 39 S. D. 64, the child's duty to assist in support of his indigent aged parents, is legal as well as moral; and parent may rightfully anticipate, regardless of legal duty, that such contribution will be made; which expectancy is a sufficient pecuniary loss to sustain right to damages; this whether the child had or not, prior to death, so contributed, or whether or not parent at that time was dependent; which rule is applicable to said state statute. Said rule differs according to the relation between the parties, according as the action is brought for benefit of the parents, etc., for loss of services or support, or is brought for benefit of a person whose damages consist only in loss or prospective benefit to which he was not legally entitled.

7. **Same—Probability, Expectancy, Of Contributions Re Support, Inferable By Jury From Legal Relationship.**

In determining the measure of damages in such a case, evidence must show reasonable possibility and expectancy of contributions to support of beneficiary, founded on some legal or moral obligation; and as between parent and child such probability and expectancy is inferable by jury from the legal duty and the relationship.

8. **Same—Instructions Re Damages—Instruction Re Rule, Whether Misleading When Further Instruction Requires Proof of Financial Loss.**

Nor was trial Court's instruction laying down such rule, misleading, when taken in connection with a further instruction that, in addition to proof of death by negligence, further proof of financial loss by reason of his death must appear, and that such loss, if any, would be the present financial value of services and money contributions mother might reasonably have expected to have received from son had he lived, that jury must consider whether the son was making regular contributions or performing any service for her at time of his death, amount of his earnings, and amount if any he would probably contribute, all to be limited by actual financial loss.

**9.   Same—Damages, No Mathematical Rule Re—Inferences From Evidence—Damages Proportionate to Pecuniary Injury—Verdict Approved.**

No mathematical rule or formula exists by which damages in this class of cases are computable by courts or juries; evidence may be shown from which jury may reasonably and approximately infer certain elements of damages, while other elements in the computation are practically incapable of direct proof; and the statute (Sec. 2931, Code 1919.) only requires jury, uninfluenced by passion or prejudice, in exercise of honest impartial judgment upon the competent evidence, to award damages deemed proportionate to pecuniary injury resulting from the death; and jury so acted in case at bar.

**10.   Negligence—Death From Wrongful Act—Suit For Damages By Heir—Statute, Verdicts Under Presumed Fair.**

Verdicts in the class of cases arising under Sec. 2931, Code 1919, are presumably fair and reasonable unless so excessive or outrageous re the circumstances as to demonstrate that jury suffered passion, prejudice or perverse disregard of justice to mislead them; nothing appearing of record to show jury were so actuated, evidence held sufficient to justify verdict.

**11.   Appeals—Evidence, Ruling Re—Technical Errors Non-prejudicial.**

While certain rulings on evidence may be technically erroneous, none of them, upon the whole record, could have been seriously prejudicial to appellant.

Appeal from Circuit Court, Brown County. HON. FRANK ANDERSON, Judge.

Action by Roswell Bottum, as Administrator of the estate of Harry R. Everett, deceased, for the benefit of Nettie Hitt, mother of said decedent, against Frank Kamen, Sr., to recover damages for negligent killing of decedent, a minor. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

*Van Slyke & Agor,* for Appellant.

*Williamson, Williamson & Smith,* for Respondent.

(3.)   To point three of the opinion, Appellant cited: Pierve v. Conners, 20 Colo. 178; 37 Pac. 721; 46 A. S. R. 279.

(4)   To point four, Appellant cited: Louisville, etc. Railway Company v. Goodykoontz (Ind.) 21 N. E. 472; 12 A. S. R. 371; Fort Worth, Etc. Railway Co. v. Hyatt, 12 Tex. Civ. App. 435, 34 S. W. 677; Galveston H. & S. A. R. Co. v. Power, 1899

Texas, 54 S. W. 629; Tiffany "Death by wrongful Act," Second Ed. Sec. 158; Smith v. C. M. & St. P. Ry., 6 S. D. 583; 28 L. R. A. 573; American Railway Co. v. Didrickson, 227 U. S. 145; Belden v. Black Hills & Ft. Pierre Ry. Co., 3 S. D. 369.

Respondent cited: Secs. 2929, 2931, Code 1919.

(8)  To point eight, Appellant cited: McKay v. New England Dredging Co., 1899, 92 Me. 454, 43 Atl. 29; Potter v. Chicago, Etc. Railway Company, 21 Wisc. 372, 95 Am. Dec. 548.

Respondent cited: Tobin v. Bruce, 39 S. D. 64, 162 N. W. 933; Garret v. L. & N. Ry., 197 Fed. 715, 117 C. C. A. 109; Id., 235 U. S. 308, 35 Sup. Ct. 32, 59 L. Ed. 242.

SMITH, J.   Action by Roswell Bottum, administrator of the estate of Harry R. Everett, deceased, a minor, for the benefit of Mrs. Nettie Hitt, his mother.   The son was killed by the explosion of the boiler of a steam threshing machine engine, alleged to have been caused by defendant's negligence.   The deceased was an employe of defendant.   Appellant challenges the authority of the administrator to maintain the action.

A petition was filed by Mrs. Hitt in the county court, asking her own appointment as administratrix of the estate of her deceased son.   Notice of this application was given as required by statute.   On the day set for the hearing Mrs. Hitt filed in the county court a written waiver of her right to such appointment and a request that one Roswell Bottum be appointed such administrator.   Bottum was appointed, and, having qualified, brought this action and recovered a judgment.   Appellant now contends that the appointment of Bottum was void and conferred no authority upon him to maintain the action.   The specific contention is that by this procedure other persons having prior right to such appointment would have had no notice of any application for the appointment of a stranger to the proceedings, that such persons might desire to waive their prior right in favor of the applicant, but not favor of a stranger, and that the county court was without jurisdiction to make such an appointment.

[1]   It is conceded that the petition is sufficient, and that due notice of the application of Mrs. Hitt for her own appointment as administratrix was given, and that an order appointing her would have been valid.   It necessarily follows that the county court had jurisdiction to appoint an administrator, and the ap-

pointment of Bottum, even if irregular—which we do not decide —was not void, and cannot be attacked collaterally. Blackman v. Mulhall, 19 S. D. 534, 104 N. W. 250; 11 R. C. L. p. 86, § 84.

There are 78 other assignments of error grouped and discussed under three heads specified in the notice of intention to move for a new trial, viz.: (1) Excessive damages appearing to have been given under the influence of passion; (2) insufficiency of the evidence to justify the verdict; (3) errors in law occurring at the trial.

[2] Under the latter head appellant sets out numerous requests for instructions refused by the trial court. The instructions given, other than particular portions thereof excepted to and assigned as error, are not in the record, nor is it made to appear that instructions equivalent to those refused were not given by the trial court.

The rule is well settled in this jurisdiction that, in the absence of an affirmative showing to the contrary, this court will presume that the jury were fully and correctly instructed upon all material matters, and, in the absence of such showing, prejudicial error is not made to appear.

In Anderson v. Anderson, 41 S. D. 32, 168 N. W. 852, this court said:

"In the absence of the instructions that were given by the court, error cannot be predicated upon the refusal to give a requested instruction." Oschenreiter v. Block, 173 N. W. 734, 6 A. L. R. 456; Collison v. Davis, 37 S. D. 107, 156 N. W. 786.

An assignment of insufficiency of the evidence to justify the verdict presents the principal question discussed in appellant's brief. Appellant's contention is that the evidence is insufficient to justify the amount of the verdict which was for $5,000.

[3] The deceased was the minor son of plaintiff, and appellant first suggests that damages should be limited to the earnings of the minor up to the time he would have attained his majority. It is conceded, however, that the majority rule is that the person for whose benefit the action is brought may recover whatever prospective loss the evidence shows he has sustained in the way of pecuniary benefit which he might reasonably have expected to receive had the deceased passed his majority, and that the question here    presented is:

"What evidence or what facts or circumstances must be introduced in order to show that a parent had a reasonable expectancy of pecuniary benefit from the continued life of the de· ceased."

The record discloses that the deceased was approximately 19 years of age at the time of his death; that he was an illegitimate child; that his mother is 36 years old; that she was married to Chas. Hitt after the deceased was born; that she was divorced October 28, 1918; that after her child was born the mother and child lived with her parents for about eight years; that her son had finished or about finished the eighth grade in school; that at the time of his death he was in good physical condition; that in April, 1919, he left Mound City, Mo., where he had lived with plaintiff since her divorce, and went to Montana, where he worked for a time and then came to South Dakota; that before he left Mound City he was working for his grandfather, and in a cement factory, where he received wages from $3.50 to $4 a day; that after he left Mound City in April, 1919, and up to the time of his death in August, 1919, he had sent his mother $50 at one time, $20 at another, and $20 at still another time; that the last amount was sent just before he went to work for the defendant at 50 cents an hour. The evidence also shows that he had contributed to his mother's support from his earnings before he left Mound City, but the amount of such contributions is not shown. The evidence shows that plaintiff has been working as a dressmaker since 1909, and that she has a home with some incumbrance, in Mound City.

American Experience Tables of Mortality were received in evidence to show expectancy of life of plaintiff and her deceased son as appears by the proceedings at the trial, and, though this table is not. in the record before us, it was before the jury, and we must presume that expectancy of life was shown to justify the amount of the verdict so far as that element of proof enters. into the award of damages. This proof of course is of much importance as affecting the amount of damages. It is in fact one of the chief factors in estimating the amount of such damages, where it appears that the beneficiary has sustained or may sustain pecuniary injury by reason of the death.

[4]   Our statute provides that (section 2931, Code 1919)—

"In every action the jury may give such damages, not exceeding in any case $10,000, as they may think proportionate to the pecuniary injury resulting."

By computations based upon the foregoing evidence as to earnings and earning capacity of deceased, and his contributions to his mother, appellant contends and endeavors to demonstrate mathematically that the pecuniary injury, present and prospective, sustained by the mother, could not equal the amount of the verdict, and that therefore the evidence is insufficient to justify the verdict.

In I. & G. N. Ry. Co. v. Ormond, 64 Tex., 485, in discussing a similar proposition in an action for damages for death by negligence, the court said:

"Taking into consideration the age, life, expectancy and earnings of the deceased at the date of his death, an easy calculation, such as that suggested by appellant's counsel, would yield a much smaller sum than that awarded by the verdict. But the additional experience and skill which may have been acquired in some of the years of life he was deprived of would increase his wages, and this element of uncertainty deprives us of the arithmetical standard suggested in appellant's brief. And in the absence of any standard, where the record or the very size of the verdict does not show passion or prejudice, we cannot determine that the verdict is clearly excessive."

In Morris v. Metropolitan Street Railway Co., 51 App. Div. 512, 64 N. Y. Supp. 878, in an action for damages for the death of a minor son, the court said:

"The measure of the plaintiff's right of recovery is the pecuniary damage which he has sustained. In measuring this, however, the consideration is not limited to the benefit received prior to the death, but it should embrace all the probable or even possible benefits which might accrue from this life, modified by all the chances of failure and misfortune. Among these is the probable or possible direct benefit from earnings during minority, and the legal duty of support of the parent owed by the infant in case of need after majority, * * * also his advice during life, and the prospect of inheriting from him after death. * * * There are few cases in which special pecuniary damage can be shown. * * * The authorities * * * show that in almost uniform course, the

award of damages for negligently causing the death of an infant has been of a  substantial sum. * * * It is quite true that we are not to apply strict rules of logic in sustaining or setting aside the verdicts of juries.  Were we to do so, the whole administration of the law by this means would be thrown into the greatest confusion, if it did not entirely fail."

[5]   Appellant also urges that, while there is some evidence of the earnings of the son and of his contributions to his mother's support, there is no evidence to show how much of such earnings would necessarily be expended in his own support.   The very contributions shown to have been made, however, must have been some portion of the amount remaining after his living expenses were paid.   But earning capacity alone is not the measure of the financial injury which might result to her from his death, as shown by the authorities cited.

Appellant relies chiefly upon McCullough v. Chicago, R. I. & P. R. Co., 160 Iowa, 524, 142 N. W. 67, 47 L. R. A. (N. S.) 27.   In that case the court said :

"The most that can be said for the evidence is that it showed the mere fact that contributions had been made to the parents by the decedent to some amount in his lifetime.   There is not the slightest disclosure as to the extent of such contributions.   Without any disclosure on that question, how could a jury form any judgment as to the amount which might have been reasonably expected in the future ?"

No further comment on that case is necessary.   Smith v. Chicago, Milwaukee & St. Paul Railway Co., 6 S. D. 583, 62 N. W. 967, 28 L. R. A. 573, cited by appellant, was an action by the father to recover for the wrongful death of an unmarried adult son.   Commenting upon the sufficiency of the evidence to sustain a verdict for more than nominal damages, this court said :

"It will have been observed in the case at bar that substantially the only fact upon which the plaintiff relies to recover is the fact that he is the father of the deceased.   It did not appear that since his son came of age he had contributed one dollar to the support of his father, or that his father had any reason to expect that he would contribute anything in the future.   The plaintiff therefore showed no pecuniary loss for which he could recover."

[6]   This evidence was held insufficient to sustain a recovery

of more than nominal damages awarded by the jury. The suggestion in that case that the father had not shown any reason to expect that the son would contribute to his support in the future is perhaps modified by the holding of this court in Tobin v. Bruce, 39 S. D. 64, 162 N. W. 933, where this court said:

"It is the moral as well as the legal duty in this state of every child, whether minor or adult, to assist in the support of their indigent aged parents. * * * Every parent has the right to expect, has the right to anticipate, regardless of legal duty, that in old age his or her child will, if necessary, contribute to his or her support. * * * This expectancy—this anticipation of support on the part of the parent—is a sufficient pecuniary loss to sustain a right to damages under the federal law in question; and it matters not whether the deceased child, prior to the time of the death of such child, had or had not, as a matter of fact, contributed to the support of the parent. It matters not whether the parent at the time of the death of the child was actually dependent upon the child for support. It is the expectancy and anticipation of such support or dependency upon such child, that furnishes the basis for pecuniary loss on the part of the parent under the federal Employers' Liability Act."

The rule is equally applicable to the statute under consideration. The case at bar is plainly distinguishable from the Smith Case, both on the facts and the law, and that case is not controlling here. Insufficiency of the evidence to sustain a recovery for the benefit of collateral kindred is not involved in this case.

In Mich. Central Ry. Co. v. Vreeland, 227 U. S. 59, 33 Sup. Ct. 192, 57 L. ed. 417, Ann. Cas. 1914C, 176, the court said:

"The rule for the measurement of damages must differ according to the relation between the parties plaintiff and the decedent, 'according as the action is brought for the benefit of the husband, wife, minor child, or parent of minor child, for the loss of services or support to which the beneficiary was legally entitled, or is brought for the benefit of a person whose damages consist only in the loss of the prospective benefit to which he was not legally entitled.' Tiffany, Death by Wrongful Act. §§ 158, 160, 161, 162."

[7, 8] Many cases are cited by appellant which hold that there must be evidence to show a reasonable probability and ex-

pectancy of contributions to the support of the beneficiary, found-
ed upon some legal or moral obligation. The effect of the deci-
sion in Tobin v. Bruce, supra, which we believe to be correct, is
that, as between child and parent, the probability and expectancy
of such contributions may be inferred by the jury from the legal
duty and the relationship. Such is the effect of one of the in-
structions given by the trial court, which is assigned and urged
as error on this appeal. Nor do we think this instruction could
have been misleading taken in connection with another instruction
given by the trial court, as follows:

"The jury are instructed that Mrs. Nettie Hitt, is not entitled
to recover any damages from the fact alone that Harry R. Everett
died, even though you find that his death was caused by negligent
acts of the defendant, unless it is further shown by a preponder-
ance of the evidence that she sustained a financial loss, by reason
of his death, and such loss, if any, would be the present financial
value of services and money contributions she might reasonably
have expected to receive from him had he lived. She is not entitl-
ed to recover anything for the loss of his society, nor is she en-
titled to recover anything for financial benefit she might possibly
have received, but only such benefits as she could reasonably have
expected to receive under all of the circumstances of this case.
And in determining what amount, if any, such loss she sustained,
you will take into consideration whether he was making any reg-
ular contributions or performing any service for her at the time
of his death, the amount of his earnings, and the amount, if any,
he would probably contribute. And it must be borne in mind that,
if any recovery is had by the plaintiff, it must be limited to the
actual financial loss sustained by Mrs. Hitt, if any, as the law
limits recovery in such cases in any event to the actual financial
loss."

[9] There is no mathematical rule or formula by which
damages in this class of cases must or should be computed by
courts or juries. Certain material matters may be shown by evidence
from which a jury may draw inferences reasonably and approxi-
mately correct as to certain elements of damages, but there are
other elements which enter into a computation of such damages
which are practically incapable of proof by direct evidence, and
the statute goes no further than to require the jury, uninfluenced by

passion or prejudice, in the exercise of an honest and impartial judgment, and upon whatever competent evidence is before them, to award damages such as they think will be proportionate to the pecuniary injury resulting from the death. There was competent evidence before the jury, including the mother's life expectancy, upon which the jury might, and in fact did, base its verdict, and the verdict itself is but one-half of the maximum amount allowed under the statute.

[10] Verdicts in this class of cases are presumed to be fair and reasonable unless so excessive or outrageous with reference to the particular circumstances involved as to demonstrate that the jury have suffered their passions, prejudice, or a perverse disregard of justice to mislead them. We find nothing whatever in the record tending to show that the jury were actuated by passion, prejudice, or any improper motive. We are therefore of the view that this court cannot say the evidence before the jury was insufficient to justify the verdict.

[11] Error is also assigned upon numerous rulings of the trial court in the reception and rejection of evidence. We have examined all of these rulings, and, while certain of them may be technically erroneous, we are satisfied none of them, upon the whole record could have been seriously prejudicial to appellant, and we do not regard them as of sufficient importance to require discussion. Upon a careful review of the record we find nothing which requires a reversal of the judgment.

The judgment and order of the trial court are therefore affirmed.